NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2982
_____

MATTIE M. COOPER,
Appellant

v.

THOMAS JEFFERSON UNIVERSITY HOSPITAL
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E. D. Pa. No. 2-16-cv-05587)
District Judge: Honorable Timothy J. Savage
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 10, 2018

Before: CHAGARES, VANASKIE and FISHER, *Circuit Judges*.

(Filed: August 20, 2018)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Mattie M. Cooper, an African American registered nurse, was terminated by her employer, Thomas Jefferson University Hospital, after she allowed her nursing license to expire. Cooper sued the hospital under 42 U.S.C. § 1981 for race discrimination. After discovery, the District Court entered summary judgment in the hospital's favor. Cooper appeals. We will affirm.

I.

In Pennsylvania, individuals employed as registered nurses must be licensed.[1] They also must renew their licenses every two years, and all state requirements must be met before a renewed license can be issued.[2] Starting in January 2015, in addition to requiring a license fee and 30 continuing education units, the Commonwealth began requiring registered nurses to take a three-hour course in child abuse recognition and reporting.[3]

Federal law requires that hospitals accepting federal Medicare and Medicaid funds ensure that their employees comply with state licensing requirements.[4] Accordingly, Thomas Jefferson University Hospital offered on-site continuing education and issued its own reminders of license renewal deadlines. The hospital's Policy 200.04 made the "employee . . . responsible for completing the necessary procedures for renewal of his/her

---

[1] 28 Pa. Code § 109.7.
[2] 49 Pa. Code § 21.29.
[3] 63 Pa. Stat. § 222; 23 Pa. Stat. § 6383.
[4] 42 C.F.R. § 482.11.

2

license."[5] The policy established processes for verifying license renewal and suspending employees who did not renew in advance of the deadline. It provided a ten-business-day grace period after expiration, but ultimately prescribed termination for any employee who failed to renew a required license.

Cooper became a registered nurse in 1981 and began working as a staff nurse at Jefferson Hospital in 2007. She was due to renew her license on October 31, 2015, as had been required every two years throughout her career. Although she had paid the fee and obtained the required continuing education units, her license expired on October 31 because she had not completed the newly-mandatory child abuse class. Cooper continued to work and completed the class online on November 16; her renewed license was issued the next day. Also on November 16, human resources manager Kathleen Shannon recommended that Cooper's employment be terminated for failing to meet job requirements by not renewing her nursing license and working without a valid license. On November 18, Shannon met with Cooper and terminated her.

Cooper argues that her supervisor, Barbara Alpini, engaged in discriminatory behavior at various times during Cooper's employment. However, Alpini went on medical leave on November 16 and did not return for more than a month. Alpini, therefore, did not make the termination decision—a fact that Cooper does not dispute.

---

[5] App. 185-87.

Cooper filed a grievance, and the hospital sustained the termination. After filing a complaint with the Equal Employment Opportunity Commission, Cooper brought suit against the hospital in the District Court.

Cooper alleged that she was terminated due to race discrimination—specifically, Alpini's personal bias and Alpini's resentment over Cooper's complaints that Alpini made professional decisions based on race. Cooper also contended that the hospital's failure to suspend her in accordance with Policy 200.04 evidenced a discriminatory plan to terminate her employment. Being suspended, she says, would have made it clear to her that her license had not yet renewed. Having not been suspended, Cooper worked throughout the first two weeks of November with an expired license. Yet Cooper admitted that license renewal was her duty.

Following discovery, the District Court granted the hospital's motion for summary judgment because Cooper did not establish a *prima facie* case of discrimination. Cooper appeals.

II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. We review a grant of summary judgment de novo.[6] Summary judgment is appropriate when, viewing the facts in the light most favorable to

---

[6] *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 256 (3d Cir. 2013).

4

the non-movant, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[7]

III.

On appeal, Cooper contends that she established a *prima facie* case of race discrimination. She also argues that the hospital did not advance a legitimate non-discriminatory reason for terminating her, and that the given reason was pretextual.

A.

Cooper does not present direct evidence that her termination was discriminatory. Rather, she relies on the well-established *McDonnell Douglas* burden-shifting framework to argue that discrimination may be inferred.[8]

Under *McDonnell Douglas*, the employee must make out a *prima facie* case of intentional discrimination.[9] Whether the employee has done so is a question of law for the court.[10] If the plaintiff establishes a *prima facie* case, the defendant has a "relatively light burden" to produce evidence of a legitimate, non-discriminatory reason for its actions.[11] The burden then shifts back to the plaintiff to show that the given reason was a pretext for the defendant's actual discriminatory motive.[12] To avoid summary judgment,

---

[7] *Id.*; Fed. R. Civ. P. 56(a).
[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).
[9] *Id.* at 802.
[10] *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).
[11] *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).
[12] *McDonnell Douglas*, 411 U.S. at 804.

5

then, Cooper needed to establish a *prima facie* case of discrimination and produce evidence that would allow a factfinder to reasonably conclude that any non-discriminatory reasons articulated by the hospital were pretextual.[13]

In order to establish a *prima facie* case of discrimination under *McDonnell Douglas*, the plaintiff must prove that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the circumstances could give rise to an inference of unlawful discrimination.[14] Such an inference may be drawn if the plaintiff identifies "a similarly situated individual outside of the protected class, who engaged in the same conduct but was treated more favorably."[15] There is no dispute that Cooper meets the first and third prongs: as an African-American, she a member of a protected class, and her termination is an adverse employment action.

A plaintiff is not qualified for a position, as required by the second prong—and her *prima facie* case fails—if there is objective evidence she did not possess minimal job qualifications such as "a license or a similar prerequisite."[16] Cooper says she was minimally qualified because on the date of her termination, she had a valid license. The hospital says she was not minimally qualified because before she was terminated, she

---

[13] Fed. R. Civ. P. 56(c), (e); *see also Fuentes*, 32 F.3d at 763.
[14] *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013).
[15] *Id.* at 170.
[16] *Makky v. Chertoff*, 541 F.3d 205, 216 (3d Cir. 2008).

worked for several days without a license. We think it unlikely that an employee who lacks a required license for some period of time during her employment is minimally qualified for her position.

We need not resolve the minimal qualifications question, however, because Cooper's *prima facie* case falls short elsewhere. She did not establish the fourth element: that the circumstances could give rise to an inference of unlawful discrimination. A plaintiff may meet this fourth element by presenting evidence that similarly situated employees outside the protected class were treated more favorably, but Cooper does not pursue that strategy.[17] Instead, she asserts that she should have been suspended under Policy 200.04, and the fact that she was not suspended, but terminated, could give rise to an inference of discrimination.

Cooper bases this argument on a step-by-step recounting of the timeline leading up to her termination. For example, Cooper argues that Alpini should have suspended her when she failed to renew her license five days before the renewal deadline, as Policy 200.04 provided. Alpini spoke with Cooper at that point, and Cooper told Alpini that she had renewed her license, offering to produce the receipt for the license fee payment. Alpini "claims she took Ms. Cooper at her word, despite the fact that the only acceptable proof of license renewal is the license itself." Appellant's Br. 29. Because Alpini took

---

[17] Cooper argued in the District Court that a white nurse was allowed to work without a license in 2009, but her argument was contradicted by the hospital's records and Alpini's testimony. Cooper abandoned the argument on appeal.

Cooper at her word, she did not suspend her, but continued to put her on the nursing schedule. Cooper argues that Alpini should have suspended her.

Cooper argues, in other words, that the facts give rise to an inference of discrimination because her supervisor gave her the benefit of the doubt and believed her when she said she had renewed her license. We disagree that supervisory forbearance and trust give rise to an inference of discrimination. The remainder of the timeline leading to Cooper's termination likewise lacks any whiff of discrimination, and therefore similarly fails to give rise to the required inference.

Cooper also argues that there could be an inference of discrimination because Alpini made supervisory decisions based on race—something Cooper had complained about in the past. Cooper admits, however, that Alpini did not terminate her; Alpini was on leave, and HR manager Kathleen Shannon made the decision.

Therefore, Cooper failed to make out a *prima facie* case, and the District Court correctly granted summary judgment.

### B.

Because Cooper failed to establish a *prima facie* case of discrimination, the District Court did not proceed further with the *McDonnell-Douglas* burden-shifting analysis. However, the record shows that the hospital's proffered reason for terminating

Cooper was legitimate, non-discriminatory, and non-pretextual. This is an alternative ground for affirmance.[18]

Where the defendant establishes a legitimate non-discriminatory reason for termination, the burden shifts back to the plaintiff to prove the reason is pretextual.[19] To show pretext, the plaintiff must offer evidence that "(1) casts doubt upon the legitimate reason proffered by the employer such that a fact-finder could reasonably conclude that the reason was a fabrication; or (2) would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination."[20]

Policy 200.04, the hospital's cited reason for terminating Cooper, provided for the termination of any employee who failed to renew a required license within ten business days of its expiration. Cooper contends this was not a legitimate, non-discriminatory reason because neither state law nor the hospital's accrediting body required termination. In other words, Cooper argues that in order to be legitimate and non-discriminatory, Policy 200.04 needed to be embodied in a statute or accreditation requirement. Cooper cites no authority to support this novel position, which is entirely unpersuasive. Her argument amounts to an attack on the strength or wisdom of the policy, but we are not an "arbitral board[] ruling on

---

[18] *Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011) ("We . . . may affirm the District Court's judgment on any basis supported by the record.").
[19] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008).
[20] *C.A.R.S. Prot. Plus, Inc.*, 527 F.3d at 370.

the strength of cause for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination."[21] Cooper has not pointed to evidence that would allow a factfinder to reasonably conclude that the hospital's articulated reason for termination was a pretext for discrimination.

Cooper argues that Alpini's asserted bias shows that the reason for termination was pretextual. As explained, however, Alpini did not terminate Cooper. Therefore, Alpini's behavior does not establish that Policy 200.04 was merely a pretext for termination.

## IV.

We will affirm the District Court's judgment.

---

[21] *Keller v. Orix Credit Alliance Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (alteration and internal quotation marks omitted (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)).